IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 05-95204 |
| JENNIFER S GURLEY | § | CASE NO: 06-30156 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS

Diana Casanova has filed multiple forged documents in bankruptcy cases in this district, engaged in the unauthorized practice of law, and failed to give truthful testimony before this Court when called to explain her conduct. This conduct is not tolerable. The Court is required to impose sanctions against Ms. Casanova.

### Background

Jennifer Gurley went to Westside Toyota to arrange to purchase a used car. One of the employees at the dealership told Ms. Gurley that he knew someone who could assist her with her financial problems and put her in contact with Ms. Casanova. Ms. Casanova then advised Ms. Gurley regarding how to file a chapter 13 bankruptcy case. She prepared the bankruptcy petition, schedules and statement of financial affairs for Ms. Gurley. She did not tell Ms. Gurley that she was required to obtain pre-petition credit counseling. Moreover, she failed to advise Ms. Gurley that she was required to file a plan and to commence payments to the chapter 13 trustee.

Ms. Gurley gave Ms. Casanova a check to cover the filing fees in the case and to pay about $50.00 in gas and parking expenses for Ms. Casanova. Although the testimony is a bit unclear, the received no direct evidence that Ms. Gurley's payments to Ms. Casanova were intended to produce any material profit to Ms. Casanova. Ms. Gurley gave Ms. Casanova a

1

check for $233.00. Ms. Gurley did not have sufficient funds in her account to cover the check and told Ms. Casanova to hold the check for a few days.

However, it soon became apparent that Ms. Gurley's current automobile would be repossessed if she did not immediately file bankruptcy. So, there was a change in plans. Gurley and Casanova decided to deposit the $233.00 check in Casanova's account. Casanova would be allowed to use the funds until the check bounced. So, Casanova deposited the check that she knew would not be honored in order to have temporary access to the funds.

Casanova then completed an application to pay the chapter 13 filing fees in installments. She lent $10.00 to Gurley as an initial payment on the filing fees. The installment payment application was filed along with the petition on November 29, 2005. The application was approved. However, when Ms. Gurley failed to file a plan and make payments to the trustee, her case was dismissed on February 27, 2006.

The dismissal was based on a motion filed by the chapter 13 trustee on December 22, 2005, as amended on January 20, 2006. When Gurley and Casanova received the December 22, 2005 motion to dismiss, they mistakenly believed that the case was already dismissed. So, on January 12, 2006, they filed a new bankruptcy petition for Ms. Gurley. Inasmuch as the first case was not dismissed until February 27, 2006, this resulted in Ms. Gurley having two simultaneous chapter 13 cases.

The actual conduct, however, is far worse. Many of the documents filed purporting to bear Gurley's signature were signed by Casanova. Accordingly, the various statements purportedly made by Gurley under penalty of perjury were not made by her at all. The following documents were forged:

- The 2005 official form B-22 (the means test form)

- The 2005 schedules

- The 2005 statement of financial affairs

- The 2006 bankruptcy petition

- The 2006 application to pay filing fees in installments

- The 2006 statement filed under 11 U.S.C. § 342

The evidence before the Court also demonstrated that Ms. Casanova had engaged in similar conduct with a different purported debtor—Linda K. Bratcher. Ms. Bratcher's bankruptcy case (Case No. 06-30307) was also filed using documents that were forged by Casanova. That case is assigned to United States Bankruptcy Judge Bohm. No relief with respect to Casanova's conduct is granted in Case No. 06-30307, but the clerk is ordered to provide a copy of this opinion to Judge Bohm.

**False Testimony**

Casanova and Gurley each testified at a show cause hearing held on April 25, 2006. Casanova's testimony was not credible.

For instance, when asked where she obtained the bankruptcy software that produced the forms that were filed, she responded that she had to file bankruptcy in 1996 and that she started off on her own in the filing but later obtained counsel. When asked again, she testified that she was not certain when she got the software. Later, she testified that she had taken the program from attorney Manuel Trigo's storage room while she was working for attorney Trigo during the past year.

Ms. Cassanova testified that in 1996, following her divorce, she filed bankruptcy. When asked if this was the only case she filed, she answered yes. She later changed the testimony to indicate that she had refiled the case after it was dismissed. Still later, she testified that she had

3

filed two or three cases on her own and that other cases were filed by attorneys. In fact, she had filed six bankruptcy cases between 1996 and 1999. When pressed about her earlier false testimony, she was unable to explain the discrepancies, except to say that they occurred a long time ago and she did not think that the question had anything to do with the matter before the Court.

Casanova also testified that she encouraged people that she was helping to contact an attorney. She referred people to attorney Mike Walker. When asked about how she located Walker, she testified that she had seen his advertising in the telephone book and on billboards. When asked when she saw the ads, she testified that she had seen the ads through the years. When asked about which lawyers represented her in her personal bankruptcy cases, Casanova testified that she had either represented herself or been represented by attorney Ben King. In fact, she had also been represented by the Walker & Patterson law firm, a firm of which attorney Mike Walker was a member. When asked why she was being untruthful, she again responded that it had been a long time.

Finally, the testimony given by Cassanova regarding her employment with attorney Manuel Trigo is conflicting. Cassanova testified that the last time she did any work for attorney Trigo was "probably last year when I was working in his office." However, at a prior hearing in this case, Cassanova testified that she presently worked for Manuel Trigo and handed Mr. Trigo's business card to the Court.[1]

The Court does not know why Casanova decided to be untruthful. But, the foregoing testimony demonstrates why the Court cannot credit Casanova's veracity. One of the key issues at the hearing was whether Casanova took money for herself or for others for providing legal

---

[1] This evidence from the February 27, 2006 hearing is not being considered by the Court in determining appropriate sanctions. Nonetheless, the previous testimony is pertinent to Cassanova's credibility before the Court.

advice to Gurley. Casanova testified that she was uncompensated and gave the advice because she was compassionate. The testimony might make sense if Casanova was attempting to assist an old friend. But, Casanova met Gurley on a referral solely for the purpose of rendering the legal advice. The explanation makes no sense. Combined with her false testimony on other maters, the Court discounts Casanova's explanation.

Nevertheless, there is no direct evidence that Casanova was compensated.

### Rule 9011 and Inherent Power

In determining appropriate sanctions, the Court should limit the sanction to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. FED. R. BANKR. P. 9011(c). *In re Porcheddu,* --- B.R. ----, 2006 WL 360530, at *10 (Bankr. S.D.Tex. 2006).

This Court has the inherent authority to regulate the practice of litigants and lawyers appearing before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

Casanova has repeatedly filed forged documents in this Court. The documents are not what they purport to be. They purport to be sworn statements under penalty of perjury when they are not even signed by the person purported to have signed them. The conduct is sanctionable both under Rule 9011 and the Court's inherent powers.

At the conclusion of the hearing in this matter, the chapter 13 trustee and Casanova agreed that Casanova's sanctions should total approximately $689.00 in this case and $274.00 in the Bratcher case. This Court declines to impose sanctions in the Bratcher case. There was no notice that a hearing would be held in that case and the case is before Judge Bohm.

In this case, a sanction of $689.00 is far less than the amount required to deter future, similar conduct. Casanova's income is low (ranging between $11,798 and $13,454 per year on

her recent tax returns), but it is not non-existent. Moreover, she testified that family members give her support when required. Accordingly, the Court finds that a sanction equivalent to one to two month's of income is appropriate.

The Court recognizes that Casanova's low income means that she cannot afford a large lump sum sanction. To deter future wrongful conduct, the Court requires Casanova to pay the United States of America $1,500, payable at the rate of $100 per month on the 15th day of each month starting May 15, 2006. Payment shall be made to the Clerk of the Court. A copy of each month's payment receipt shall be provided to Steve Statham, United States Trustee's Office, 515 Rusk Street, Houston, Texas 77002. The receipt must be provided not later than the 25th day of each month. If a monthly payment is not timely made, all future payments will become immediately due and payable.

Failure to make a payment when due may result in a finding of contempt.

### Referral to United States Attorney

A copy of this memorandum opinion shall be sent by the Clerk to the United States Attorney.

Signed at Houston, Texas, on May 1, 2006.

MARVIN ISGUR
United States Bankruptcy Judge

6